NOT FOR PUBLICATION                    [Dkt. Ents. 50, 51, 52, 58]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| PETER VAZQUEZ, <br><br>    Plaintiff, <br><br> v. <br><br> CITY OF ATLANTIC CITY, et al., <br><br>    Defendants. | Civil No. 12-cv-01752 (RMB/AMD) <br><br> **OPINION** |

APPEARANCES:

Bryan M. Konoski
Treyvus & Konoski
305 Broadway, 14th Floor
New York, NY 10007
    Attorney for Plaintiff, Peter Vazquez

Michael E. Riley & Tracy Riley
Law Offices of Riley & Riley
The Washington House
100 High Street, Suite 302
Mount Holly, NJ 08060
    Attorney for Defendant, Atlantic City

Grace K. Flanagan & Patrick J. Wolf
Zarwin, Baum, Devito, Kaplan Schaer & Toddy, P.C.
1818 Market Street, 13th Floor
Philadelphia, PA 19103
    Attorneys for Defendant, Franco Sydnor

Christopher C. Mauro
Camacho Mauro Mulholland, LLP
350 Fifth Avenue, Suite 5101
New York, NY 10118
    Attorney for Defendants, Harrah's Resort Atlantic City &
    Howard Weiss

1

**BUMB**, UNITED STATES DISTRICT JUDGE:

I.   **Introduction**

This action arises out of a May 30, 2010 incident during
which Plaintiff Peter Vazquez ("Plaintiff") was arrested and
removed from Harrah's Hotel and Casino ("Harrah's") in Atlantic
City by Atlantic City Police Officer Franco Sydnor ("Sydnor").
Plaintiff brings claims against Sydnor, Harrah's, its employee
Howard Weiss ("Weiss"), and the City of Atlantic City ("Atlantic
City").[1]

Before the Court are three motions for summary judgment
filed by Atlantic City, Sydnor, and Harrah's and Weiss.  This
Court held oral argument on these motions on May 30, 2014.  For
the reasons stated on the record by the Plaintiff, all claims
against the City of Atlantic City are dismissed and, therefore,
Plaintiff's cross-motion to amend the complaint [Docket No. 58]
and Atlantic City's motion for summary judgment [Docket No. 50]
are dismissed as moot.  For the reasons that follow, Defendant
Sydnor's and Defendants Harrah's and Weiss's motions for summary
judgment will be granted in part and denied in part.

---

[1] The Amended Complaint names several other Harrah's employees:
Michael Logan, John Paul Copple, Larry Szapor, Security Officer
Pepe, and Security Officer Dewitt. (Amended Compl., Dkt. Ent.
19, at 1.) These individuals have been stipulated as dismissed
with prejudice from this action. (See Dkt. Ent. 42.)

## II. **Factual Background**[2]

Plaintiff arrived at Harrah's on May 30, 2010 with two friends, Harold Buisson ("Buisson") and Jeremy Criado ("Criado"). (Sydnor's Statement of Undisputed Material Facts ("Sydnor's SUMF"), Dkt. Ent. 52, ¶ 1; Plaintiff's Statement of Undisputed Facts ("Pl.'s SUMF"), Dkt. Ent. 57, ¶ 6).  After arriving, Plaintiff opened a tab with his credit card and license at the bar and ordered a round of drinks for himself and his two friends. (Pl.'s SUMF ¶ 8; Sydnor's SUMF ¶ 4).  Plaintiff states that when we went to purchase a second round, the bartenders could not locate his credit card, so he paid for the second round in cash. (Pl.'s SUMF ¶ 10).  Around 10:30 p.m., Plaintiff informed Crowd Control Supervisor Michael Logan ("Logan") of his lost credit card. Logan then notified Howard Weiss, a Harrah's nightlife director, who came to talk with Plaintiff. (Harrah's & Weiss's Statement of Undisputed Material Facts ("Harrah's SUMF"), Dkt. Ent. 51, ¶ 9; Plaintiff's Response to Harrah's Facts ("Pl.'s Resp. Harrah's"), Dkt. Ent. 57, ¶ 9). Plaintiff states that approximately fifteen minutes into his conversation with Weiss, his credit card and license were found. (Pl.'s SUMF ¶ 13).  While the parties heavily dispute what

---

[2] Where there are significant factual disputes between the parties, the facts should be construed in favor of the non-moving party. See Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004), cert. denied, 543 U.S. 956 (2004).

occurred next, this Court has the benefit of a video that captures silent footage of much of the interaction.  As such, this Court has "relied on the videotape[] where possible, to state the facts of this case."  Green v. New Jersey State Police, 246 F. App'x 158, 159 n.1 (3d Cir. 2007).  This Court notes, however that, in addition to a lack of audio, certain key moments in the incident are obstructed from view on the video.[3]

Plaintiff contends that after receiving his card and bill, he noticed the bill had several drinks that neither he nor his friends ordered. (Pl.'s SUMF ¶ 14).  Plaintiff began to dispute the bill with Weiss because of the additional charges and for his overall treatment. (Sydnor's SUMF ¶¶ 10-11; Plaintiff's Response to Sydnor's Facts ("Pl.'s Resp. Sydnor"), Dkt. Ent. 57, ¶¶ 10-11).  At this point, Weiss maintains he notified Sydnor to come over, as he did not believe the license was Plaintiff's identification. Sydnor, who was working special detail at "the Pool" nightclub in Harrah's, began to question Plaintiff. (Harrah's Statement of Undisputed Material Facts ("Harrah's SUMF"), Dkt. Ent. 51, ¶ 10).

Plaintiff denies the accuracy of Weiss's statements. Plaintiff disputes that there was ever a legitimate question as

---

[3] See Patterson v. City of Wildwood, 354 F. App'x 695 (3d Cir. 2009)(finding that a videotape could not blatantly contradict a party's account of the facts where the video does not portray the actual incident).

to his ownership of the card and license. (Pl.'s Resp. Harrah's ¶ 10). Plaintiff asserts that Weiss could not have thought there was a problem with either document because he was attempting to get Plaintiff to pay the bill. (Id.)[4] Plaintiff maintains the identification issue was concocted by Sydnor to support Weiss and pressure Plaintiff into paying the contested bill. (Id.)

After approaching the Plaintiff, Sydnor began to ask Plaintiff about the identification. (Harrah's SUMF ¶ 11; Pl.'s SUMF ¶ 17). Plaintiff states Sydnor requested Plaintiff's address, license information, and social security number. (Pl.'s SUMF ¶ 17). Sydnor also requested a writing sample to compare with the signature on the license. (Id.) Plaintiff offered to retrieve another photo identification from his room at the hotel upstairs, but was told not to do so. (Id.)

Harrah's and Weiss maintain that while Sydnor was reviewing the identification, Plaintiff became belligerent and stepped towards Weiss in an aggressive manger. (Harrah's SUMF ¶ 11). They further contend that as Plaintiff attempted to push Weiss, Sydnor intervened and took Plaintiff to the ground. (Id.)

---

[4] Additionally, the "Full Case Report" prepared by Sydnor stated "[Weiss] advised me that the bill was $47.00 and the male is refusing to pay the bill because he was evicted from the nightclub for causing problems with another guest inside. I approached and advised the male later identified as Peter Vasquez [sic] to pay the bill or the staff would file criminal charges on him for Theft of Services." (ACPD Full Case Print-out at 1).

Sydnor states that after he arrived, the dispute between Weiss and Plaintiff began to escalate. (Sydnor SUMF ¶ 14). Plaintiff's friend Criado attempted to break up the situation seeing that Plaintiff and Weiss were "in each other's face." (Id.)  In response, Plaintiff pushed Criado forcefully away. (Id. at ¶ 18). Sydnor states that Plaintiff stepped back and forward toward Weiss, which is when Sydnor grabbed Plaintiff.

Plaintiff admits that he put his arm up to Criado, but denies that he forcefully pushed him. (Pl.'s SUMF ¶ 18).[5] Plaintiff states that during their conversation, Weiss smirked at Plaintiff, cursed at him and pushed him in the chest. (Id. at ¶ 19). Plaintiff maintains he never pushed or made contact with Weiss. (Id. at ¶ 20).[6]  During his deposition, Weiss admitted that he pushed Plaintiff.[7]  Plaintiff states that Sydnor then came past Weiss, grabbed Plaintiff, and threw him to the ground. (Id. at ¶ 21).  Plaintiff also stated in his deposition that Sydnor struck and kicked him after he was on the ground.  (Pl.'s Dep. 116:19-20 & 117:12-23).  Critical aspects of Sydnor and Plaintiff's interaction are not captured by the video.

After being handcuffed, Plaintiff was put into a holding cell at Harrah's.  The Full Case Print-out completed by Sydnor

---

[5] The video corroborates that Plaintiff pushed Criado.
[6] The video is not entirely clear on this point.
[7] Weiss Dep. Tr. 76:8-10 "Q: So is it fair to say you pushed [Plaintiff]?" A: I defended myself and pushed him away from me."

states that Plaintiff pushed Weiss in the chest and raised a
closed fist in the air as if to strike Weiss. (Ex. C ("ACPD Full
Case Print-out") to Amend. Compl., at 2-3). It further states
that when Sydnor intervened, Plaintiff wrapped his arms around
Sydnor's waist and attempted to lift him in the air to throw him
to the ground. Sydnor states he was able to stop Plaintiff from
lifting him, and they fell to the ground, where Plaintiff began
to scream and fight Sydnor. (Id.). After being told numerous
times that he was under arrest and to stop resisting, Plaintiff
continued to fight and resist against Sydnor, refusing to place
his hands behind his back. (Id.). Sydnor had to use numerous
hand and knee strikes to Plaintiff's torso to stop him from
fighting. (Id.). Key parts of the interaction between Sydnor
and Plaintiff cannot be seen on the video as the view is
obstructed.

Plaintiff disputes the accuracy of Sydnor's version of
events. Plaintiff maintains the surveillance video shows he
never touched Weiss prior to Sydnor grabbing him. (Pl.'s SUMF ¶
20). Further, he alleges he never pushed Sydnor, grabbed Sydnor
around the waist, or kicked, punched, or struck him. (Id. at ¶¶
26-29). Plaintiff maintains the surveillance footage shows
Sydnor grabbing and throwing Plaintiff to the ground, not the
other way around. (Id. at ¶ 30). According to Plaintiff, he
continually asked Sydnor "what are you doing?" when he was

grabbed. (Id. at ¶ 22).  Sydnor did not tell him that he was under arrest until after he was on the ground and handcuffed. After being handcuffed, Plaintiff states Sydnor said "you're a firefighter tough guy? I'm going to make sure that you lose your pension. I'm going to make sure you lose your job." (Id. at ¶ 23). Sydnor denies saying this to Plaintiff. (Sydnor's Response to Plaintiff's Facts ("Sydnor's Resp. Pl."), Dkt. Ent. 62, ¶ 23).

Plaintiff was charged by Sydnor with disorderly conduct, resisting arrest, and aggravated assault on a police officer. (Harrah's SUMF ¶ 12; Pl.'s Resp. Harrah's ¶ 12); Ex. A ("Criminal Complaint") to Amend. Compl., Dkt. Ent. 19). The Criminal Complaint states that Plaintiff assaulted Sydnor by "pushing Detective Sydnor in the chest, grabbing and bear hugging Detective Sydnor and attempted several times to slammed [sic] Detective Sydnor to the ground." (Id.) Again, Plaintiff denies this version of events.  On September 15, 2010 the criminal charges against Plaintiff were dismissed in their entirety. (Pl.'s SUMF ¶ 36; Sydnor's SUMF ¶ 26).

Plaintiff filed this action on March 21, 2012.  Following oral argument in this matter, only the following claims remain pending in Plaintiff's First Amended Complaint: Claims under 42 U.S.C. § 1983 for Excessive Force (Count Three), Failure to Intervene for Excessive Force (Count Four), False Arrest (Count

Five), Malicious Prosecution (Count Seven), Failure to Intervene for Malicious Abuse of Process and/or Prosecution (Count Eight), and pendent state law claims for Assault (State Count Two), Battery (State Count Three), False Arrest/False Imprisonment (State Count Five), and Malicious Prosecution (State Count Six).

III. **Standard**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id. When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Further, a court does not have to adopt the version of facts asserted by the nonmoving party if those facts are "utterly discredited by the record [so] that no

9

reasonable jury" could believe them.   Scott v. Harris, 550 U.S. 373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party . . . ." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatte v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 228

(3d Cir. 2009)) ("[S]peculation and conjecture may not defeat summary judgment.").

## IV. Analysis

### A. Weiss & Harrah's Motion for Summary Judgment

#### i.   Weiss as a State Actor

Weiss moves for summary judgment on all federal claims on the basis that he is not a state actor under § 1983. A private party can be held to be a state actor under four tests.

> First, where "there is a sufficiently close nexus between the state and the challenged action of the [private] entity so that the action of the latter may fairly be treated as that of the state itself." ["close nexus test"]. Second, where "the state has so far insinuated itself into a position of interdependence" with a private party that "it must be recognized as a joint participant in the challenged activity." ["symbiotic relationship test"]. Third, where a private party is a "willful participant in joint action with the State or its agents." ["joint action test"]. Fourth, where the private party has been "delegated ... a power 'traditionally exclusively reserved to the State.' " ["public function test"].

Pugh v. Downs, 641 F. Supp. 2d 468, 472 (E.D. Pa. 2009) (internal citations omitted).

Here, Plaintiff argues that under the joint action test, Weiss is a state actor for purposes of § 1983.  Regardless of the test employed, "under a summary judgment analysis, there must be no genuine dispute of material fact with respect to the question of whether a private entity actively exercised power

possessed by virtue of state law and made possible only because it was clothed with the authority of state power." Cahill v. Live Nation, 512 F. App'x 227, at *230-31 (3d Cir. Jan. 31, 2013). The Third Circuit has made clear that "a private entity may only be deemed a state actor, and therefore be liable under § 1983, for the actions of police officers if: (1) the private entity has a 'pre-arranged plan' with the police officers and, (2) under the plan, the police officers will 'substitute their [own] judgment' with that of the private entity's." Id. (quoting Cruz v. Donnelly, 727 F. 2d 79, 81-82 (3d Cir. 1984)).

For purposes of this motion, this Court finds that Plaintiff has submitted sufficient evidence to create an issue of fact as to the first prong of the test only – i.e., the existence of a "pre-arranged plan." Plaintiff correctly asserts that Sydnor's duties at Harrah's were pursuant to his "special assignment" and during that assignment, Sydnor helped enforce casino rules and support Harrah's staff. See Cahill, 512 F. App'x 227 at *230-31 (finding that a formal contract between the township and venue provided sufficient evidence to satisfy the first prong).

Plaintiff has not, however, submitted sufficient evidence to create a genuine dispute of fact as to the critical second prong of the test – i.e., there is no evidence to suggest that Sydnor substituted the judgment of any Harrah's employees for

his own. To the contrary, Sydnor testified that with respect to situations that arise at Harrah's, he would individually evaluate situations and gather information before acting "as a police officer." (Sydnor Dep. 19:18-20:5 & 55:2-6 "I analyze the situation.  I just don't get involved and just go hands on everything.").  Plaintiff has presented no evidence whatsoever to suggest that Weiss commanded or instructed Sydnor to grab or arrest Plaintiff.  Instead, Plaintiff merely points to deposition testimony that officers like Sydnor helped the casino keep out the "wrong element."  See Weiss Dep. 30:4-9.  That Sydnor might have helped Harrah's enforce "in-house" rules in not the relevant inquiry; instead, the "critical distinction" is whether Sydnor was responsible for the method of enforcing those rules – i.e., whether he exercised his own judgment.  See Cahill, 512 F. App'x at 231 (finding that even if officers' interaction with a patron was to enforce in-house rules, that was not sufficient to transform the private entity into a state actor).

Plaintiff also alleges that Sydnor and Weiss were friends and conspired together, but presents no factual evidence of the same.[8]  Without any indication that Sydnor replaced his own

---

[8] Plaintiff's expert, Dr. Christopher Chapman, notes in his report [Docket No. 55-2] that Sydnor refers to Weiss by his first name and this demonstrates a personal relationship. [See

independent judgment with that of either Weiss or Harrah's, Weiss cannot be deemed a state actor.  <u>Id</u>. (finding no state action where there was no evidence that the police blindly obeyed the directives of private actor "without any thought as to whether this would be been an appropriate course of action.").  As such, all federal claims based on § 1983 against Weiss must be dismissed.  <u>See</u> <u>Cruz v. Donnelly</u>, 727 F.2d 79, 82 (3d Cir. 1984) (finding the absence of any allegation of an agreement subordinating the officer's judgment fatal to § 1983 claim).

Similarly, Plaintiff's claims brought pursuant to the New Jersey Civil Rights Act ("NJCRA") for false arrest, false imprisonment (State Count Five), and malicious prosecution (State Count Six) against Weiss must be dismissed.  <u>See</u> <u>Perez v. Zagami, LLC</u>, 2014 N.J. LEXIS 484, at *27 (May 21, 2014)(holding that the NJCRA "was intended to provide New Jersey citizens with a state analogue to Section 1983 actions" and private rights of action filed under N.J.S.A. 10:6-2(c) require the presence of state action, and thus can only be asserted against private individuals acting "under color of law"); <u>Cottrell v. Zagami, LLC</u>, 2014 N.J. LEXIS 483 (May 21, 2014) (same); <u>see</u> <u>also</u>, <u>Trafton v. City of Woodbury</u>, 799 F. Supp. 2d 417, 443 (D.N.J.

---

Doc. 55-2 at p. 21]. This, however, is not sufficient for a finding of state action.

2011)("This district has repeatedly interpreted NJCRA analogously to § 1983.").

ii.  <u>Other Claims Against Weiss</u>

This Court will not address Weiss's arguments as to assault and battery which were raised only in the reply brief.  <u>See</u> <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 182 (3d Cir. 1993)(finding that absent extraordinary circumstances, an argument not raised and argued in the opening brief is deemed abandoned).  As such, those claims survive summary judgment.[9]

Weiss moves to dismiss Plaintiff's claims for punitive damages.  (Harrah's Br. at 35-36).  Under New Jersey law, to receive punitive damages, a plaintiff must demonstrate that the harm was "actuated by actual malice or accompanied by a wanton and willful disregard of persons who foreseeably might be harmed by those acts or omissions." N.J.S.A. 2A:15-5.12(a) (West 1995). Because the issue of punitive damages is a fact-sensitive question for a jury, ruling on this issue at the summary judgment stage would be premature. <u>Lowe v. Medco Health Solutions</u>, 2012 U.S. Dist. LEXIS 85427, 2012 WL 2344844, at *7 (reaching same conclusion); <u>Incorvati v. Best Buy Co.</u>, Inc., No. 10-1939, 2013 U.S. Dist. LEXIS 90412, 2013 WL 3283956, at *11 (D.N.J. June 27, 2013)(same). Accordingly, this Court denies

---

[9] Even if Weiss had moved on this issue, there are clearly genuine issues of material fact, as described above.

Weiss's motion for summary judgment on this issue, without prejudice.

    iii. <u>Harrah's as a State Actor</u>

Harrah's similarly moves for summary judgment on all § 1983 claims asserted by Plaintiff.  These claims will be dismissed because Harrah's, like Weiss, was not a joint state actor with Sydnor.

As stated above, Plaintiff has put forward no evidence to suggest an agreement in which police officers substituted their own judgment for that of Harrah's or its employees.  With respect to Harrah's, Plaintiff also argues that in maintaining the holding cell on their property, Harrah's is a joint actor with the police. It is true that when making an arrest, police officers sometimes make use of the holding cell before moving arrestees to a police station.  Absent evidence of some sort of agreement in which Atlantic City police officers would hold patrons in the holding cell solely at the judgment of Harrah's employees, the presence of the Harrah's security holding room does not suffice to show state action.  <u>See</u> <u>Cruz</u>, 727 F.2d at 79-80 (finding that the fact that plaintiff was held in store manager's office while being searched by police officers did not create joint state action); <u>Pugh</u>, 641 F. Supp. 2d at 470, 475 (finding no state action where plaintiff was allegedly assaulted in casino holding room by police officer).  Because Plaintiff

has presented no evidence to create an issue of fact as to whether Sydnor's judgment was replaced by Harrah's or its employees, summary judgment will be granted as to Plaintiff's § 1983 claims against Harrah's.

Similarly, Plaintiff's state law claims against Harrah's for false arrest/imprisonment and malicious prosecution asserted under the NJCRA must be dismissed for the same reasons discussed above.  See Perez, 2014 N.J. LEXIS 484, at *27 (holding that the NJCRA "was intended to provide New Jersey citizens with a state analogue to Section 1983 actions" and private rights of action filed under N.J.S.A. 10:6-2(c) require the presence of state action, and thus can only be asserted against private individuals acting "under color of law").  With the dismissal of these claims, there are no claims remaining against Harrah's.[10]


**III. Sydnor's Motion for Summary Judgment**

As an initial matter, this Court notes that because neither Harrah's nor Weiss was a state actor, Plaintiff's claims for failure to intervene against Sydnor (Counts Four and Eight) necessarily fail because Sydnor cannot be found to have failed to intervene on his own allege conduct.  What remain are Plaintiff's claims against Sydnor under both § 1983 and the

---

[10] During oral argument, Plaintiff waived its claims against Harrah's based on a theory of agency (Count Eleven).

NJCRA for Excessive Force, False Arrest, and Malicious
Prosecution.

    i.   <u>Excessive Force (Count Three)</u>

    Under both federal and New Jersey law, a claim that
excessive force was used during an arrest requires that a
plaintiff show that a law enforcement officer used force that
was unreasonable under the circumstances.  <u>Graham v. Connor</u>, 490
U.S. 386, 396 (1989)(federal law); <u>Hanson v. United States</u>, 712
F. Supp. 2d 321, 329-30 (D.N.J. 2010)(New Jersey state law).
Sydnor maintains that he is entitled to qualified immunity on
the excessive force charge because his actions were reasonable
in these circumstances.  "An official sued under §1983 is
entitled to qualified immunity unless it is shown that the
official violated a statutory or constitutional right that was
"'clearly established'" at the time of the challenged conduct."
<u>Plumhoff v. Rickard</u>, 2014 U.S. LEXIS 3816, at * 23 (May, 27
2014).

    When faced with an assertion of qualified immunity, The
Court first asks "whether the officer violated a constitutional
right," and second, "whether the right was clearly established,
such that his conduct was unlawful in the situation he
confronted." <u>Lamont v. New Jersey</u>, 637 F.3d 177, 182 (3d Cir.
2011) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 201-02 (2001)).
The Court notes that under <u>Pearson v. Callahan</u>, it is no longer

mandatory to perform the Saucier two step analysis in a specific
order.  See Pearson, 555 U.S. 223, 227 (2009)("Saucier's
procedure should not be regarded as an inflexible requirement.")
The Court finds that in light of the circumstances in the
particular case at hand, the traditional order of analysis is
appropriate.

In determining the reasonableness of force used, courts
balance the government interests at stake against the intrusion
on the individual's Fourth Amendment rights. Graham, 490 U.S. at
396; Hanson, 712 F. Supp. 2d at 330 (indicating that New Jersey
courts look to the same factors as laid out in Graham, 490 U.S.
at 396).  This analysis requires careful consideration of "the
facts and circumstances of each particular case, including the
severity of the crime at issue, whether the subject poses an
immediate threat to the safety of the officer or others, and
whether he is actively resisting arrest or attempting to evade
arrest by flight." Graham, 490 U.S. at 396 (citing Tennessee v.
Garner, 471 U.S. 1, 8-9 (1985)).

Courts also consider "the possibility that the person
subject to the police action [was] themsel[f] violent or
dangerous, the duration of the action, whether the action takes
place in the context of effecting an arrest, the possibility
that the suspect may be armed, and the number of persons with
whom the police officer must contend at one time." Rivas v. City

19

of Passaic, 365 F.3d 181, 198 (3d Cir. 2004)(internal quotations
and citations omitted).  In the Third Circuit, courts take into
account "all of the relevant facts and circumstances leading up
to the time that the officers allegedly used excessive force."
Rivas, 365 F.3d at 198 (citing Abraham v. Raso, 183 F.3d 279,
291 (3d Cir. 1999)).

Reasonableness "must be judged from the perspective of a
reasonable officer on the scene, rather than with the 20/20
vision of hindsight," since "police officers are often forced to
make split-second judgments in circumstances that are tense,
uncertain, and rapidly evolving." Ryburn v. Huff, 132 S. Ct.
987, 992 (Jan. 23, 2012)(quoting Graham, 490 U.S. at 396-97).
The Court must therefore conduct its balancing test in light of
the facts that were available to the officer at the time he
acted.  Curley v. Klem, 499 F.3d 199, 207 (3d Cir. 2007)(citing
Maryland v. Garrison, 480 U.S. 79, 85 (1987)).

In this matter, viewing the facts in the light most
favorable to Plaintiff, a reasonable jury could conclude that
Sydnor's use of force was excessive under the circumstances.  As
discussed above, key portions of the interaction between
Plaintiff and Sydnor are obstructed on the video and Plaintiff
has alleged several key facts that, if believed, could lead a
reasonable jury to conclude that Sydnor used excessive force.
Plaintiff testified that Sydnor grabbed him, lifted him in the

20

air and threw him to the ground. (Pl.'s Dep. at 190:11-18).  In
addition, Sydnor admitted to using "numerous hand and knee
strikes" on Plaintiff while he was on the ground. (ACPD Full
Case Print-out at 1). Plaintiff maintains that he did not strike
or resist Sydnor beyond attempting to free his hands (Pl.'s Dep.
at 191:12-15) and points to the video surveillance footage to
corroborate his version of events.  Such allegations, which are
neither established nor definitely refuted by the videotape,
present issues of material fact for the jury.  See Green, 246 F.
App'x at 161 (finding that plaintiff's allegations of force
presented a material issue of fact for the jury where videotape
did not definitely establish facts).

Turning to the reasonableness factors from Graham and Rivas
as set forth above, Sydnor's actions, if proven as stated by
Plaintiff, would constitute excessive force.  It is undisputed
that Plaintiff was unarmed and was the only person that Sydnor
had to contend with.  Plaintiff's expert contends that "[a]
reasonable police officer would not have reasonably believed
that Mr. Weiss was in imminent danger of being the victim of
unlawful force."  [Chapman Report, Docket No. 55-2 at p. 41].
Moreover, if Plaintiff was not resisting, it would not have been
reasonable for Sydnor to pick Plaintiff up and throw him to the
ground and then employ strikes once Plaintiff was thrown to the
ground.  See Green, 246 F. App'x at 161 (finding that where

21

plaintiff was arrested for a nonviolent offence and was unarmed
that it would have been unreasonable for officers to strike him
with a flashlight or continue kicking him after he was pulled
from car).

Because this Court has found that a reasonable jury could
find a constitutional violation based on the alleged facts, this
Court next considers whether Plaintiff's rights in this specific
context were clearly established.  "In other words, existing
precedent must have placed the statutory or constitutional
question confronted by the official beyond debate." Plumhoff v.
Rickard, 134 S. Ct. 2012, *24 (2014)(internal quotations
omitted).  This Court finds that a reasonable officer would
know, based on the factors set forth in Graham, that it would be
excessive to grab an unarmed person who was not an initial
aggressor, not resisting arrest and pick him up, throw him to
the ground and then use continued strikes once that individual
was subdued.  "Because it would be unreasonable for [an]
officer[] to believe these actions would not constitute
excessive force, [this Court] hold[s] that [Plaintiff's] rights
were 'clearly established.'" Green at 163; see also, May v.
Sanna, No. 09-3253, 2012 WL 1067866, at *8 (D.N.J. March 29,
2012) (collecting cases demonstrating clearly established law
against police assault without provocation).  Sydnor's request

22

for qualified immunity is therefore denied as is his motion for summary judgment on Plaintiff's excessive force claims.

    ii.  <u>Malicious Prosecution (Count Seven; State Count Six)</u>

    Plaintiff also brings claims for malicious prosecution under § 1983 and NJCRA.  A malicious prosecution claim under both § 1983 and the NJCRA requires that: (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and, (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of the proceeding. <u>DiBella v. Borough of Beachwood</u>, 407 F.3d 599, 601 (3d Cir. 2005).[11]

    Sydnor argues that judicial estoppel warrants dismissal of the malicious prosecution claim because Plaintiff previously stipulated to probable cause.  The Third Circuit has held that judicial estoppel[12] may only be imposed if the following criteria have been met:

_____

[11] It is well established that the NJCRA is interpreted in nearly identical terms to § 1983. <u>Trafton v. Woodbury</u>, 799 F. Supp. 2d 417, 443 (D.N.J. 2011); <u>Chapman v. New Jersey</u>, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009).
[12] While Sydnor is correct that the Plaintiff improperly responds to his arguments regarding judicial estoppel with arguments

23

> First, the party to be estopped must have taken two
> positions that are irreconcilably inconsistent. Second,
> judicial estoppel is unwarranted unless the party changed
> his or her position in bad faith — i.e., with the intent to
> play fast and loose with the court. Finally, a district
> court may not employ judicial estoppel unless it is
> tailored to address the harm identified and no lesser
> sanction would adequately remedy the damage done by the
> litigant's misconduct.

In re Kane, 628 F.3d 631, 638 (3d Cir. 2010) (quoting Montrose

Med. Grp. Participating Sav. Plan v. Bulger, 243 F.3d 773, 779

(3d Cir. 2001)).

Sydnor points to the colloquy between Mr. Steven Pepe,

Plaintiff's criminal attorney, Ms. Abdur-Razzq, the prosecuting

attorney, and the criminal court in support of his argument that

Plaintiff stipulated to the existence of probable cause.  The

relevant portion of the transcript is as follows.

| | |
|---|---|
| Ms. Abdur-Razzq: | Good news, we've resolved another matter |
| The Court: | Which is? |
| Ms. Abdur-Razzq: | That is the matter concerning Peter Vasquez [sic]. Officer Simmons [sic], Detective. |
| Mr. Pepe: | Good afternoon, Your Honor. Stephen A. Pepe on behalf of the defendant, Mr. Vasquez. |
| Ms. Abdur-Razzq: | Judge, good afternoon. Jacqueline Abdur-Razzq. Your Honor, I've had the opportunity to conference this matter, and Your Honor, we may have some proof problems. I believe Counsel wanted to put something on the record. |

----

related to collateral estoppel, (Sydnor Reply Br. at 5), this
Court, nevertheless, is able to determine that based on the
circumstances of this case, judicial estoppel is, nevertheless,
inapplicable.

```
MR. PEPE:          Judge, with regards to this matter, the
                   officer's indication was that he really
                   had nothing to do with the matter other
                   than the arrest, that it was actually
                   between my client and someone from
                   Harrah's who is not present. I believe
                   the state was going to move to dismiss,
                   and I would stipulate probable cause
                   for the issue and stay the complaints.
THE COURT:         Okay, the state can't go forward.
MS. ABDUR-RAZZQ:   That's correct. Thank you, Judge.
THE COURT:         Or will not go forward, and that matter
                   is dismissed.
MR. PEPE:          Thank you very much, Your Honor. Thank
                   you, Officer. I appreciate it.
```

(Ex. 5 to Dkt. Ent. 52 ("Sydnor's Br.").)

From the above transcript, it is unclear whether the stipulation of probable cause "for the issue" was accepted by the court, agreed to by the prosecutor, or even considered in the dismissal of the case.  At a minimum, whether Plaintiff actually stipulated to probable cause is an issue of fact for a jury to decide.  Therefore, this Court cannot find that the Plaintiff has taken inconsistent positions, let alone in bad faith, warranting the application of judicial estoppel.

In his reply brief, Sydnor additionally argues that Plaintiff is unable to establish a claim for malicious prosecution because he is unable to demonstrate actual innocence of the crime charged because the criminal charges were dismissed pursuant to a nolo prosequi stipulation.  As an initial matter, this Court notes that arguments raised in a reply brief need not be addressed.  See Kost, 1 F.3d at 182 (finding that absent

extraordinary circumstances, an argument not raised and argued in the opening brief is deemed abandoned).  That said, even if this Court were to entertain the merits of this argument, the Third Circuit has stated that "[a] nolle prosequi disposition is a favorable termination unless the accused has entered into a compromise or surrendered something of value to obtain the outcome."  Malcomb v. McKean, 535 F. App'x 184, 187 (3d Cir. 2013).  Based on the disputed issues of fact with respect to whether Plaintiff stipulated to probable cause, this Court cannot agree with Sydnor's argument that Plaintiff would be unable to demonstrate actual innocence.

This Court similarly finds that there are issues of fact precluding a determination on Sydnor's assertion of qualified immunity.  In his brief, Sydnor argues that he was discharging his duties in good faith and that Sydnor observed Plaintiff taking loudly, pushing a bystander and "moving toward Weiss," which justified him initiating the arrest and the prosecution of Plaintiff based on "his reasonable and good faith belief that Plaintiff was engaged in unlawful activity, indeed, was about to strike Weiss."  Sydnor Br. at 20.

Plaintiff denies that he either pushed Weiss or looked as though he was about to strike Weiss.  Plaintiff further contends that the Criminal Complaint, which states that Plaintiff, inter alia, pushed Syndor, grabbed and bear hugged him and attempted

26

to slam him to the ground, is contradicted by Plaintiff's testimony and the video of the incident.  Thus, Plaintiff contends that Detective Sydnor "lied in various official reports" including the Criminal Complaint.  Again, while the video captures portions of the interaction between Sydnor and Plaintiff, relevant sections are obscured.

In addition to the disputes of fact surrounding whether Plaintiff stipulated to probable cause, the facts surrounding the circumstances leading to the arrest are heavily disputed and, based on this, the Court finds that is also a genuine dispute of material fact as to whether Sydnor acted without probable cause in filing the criminal complaint against Plaintiff. "It naturally follows that the Court cannot determine, as a matter of law, whether a constitutional violation has occurred for purposes of assessing Defendant's entitlement to qualified immunity until such time as the foregoing factual issues are resolved by the jury." Prince v. Aiellos, No. 09-5429, 2013 U.S. Dist. LEXIS 179756, at * 20 (D.N.J. Dec. 20, 2013)(holding that "a reasonable jury could agree with Plaintiff's version of the events that took place and thus determine that Defendant fabricated the facts underlying the criminal complaint or otherwise lacked probable cause when initiating the criminal proceeding against Plaintiff."); Monteiro v. City of Elizabeth, 436 F.3d 397, 405 (3d Cir. 2006).

27

("Although qualified immunity is a question of law determined by the Court, when qualified immunity depends on disputed issues of fact, those issues must be determined by a jury.").

Once the jury has made the requisite factual determinations, this Court can proceed with the qualified immunity analysis.[13]  Summary judgment on Plaintiff's malicious prosecution claims is therefore denied.

## ii.  False Arrest (Count Five; State Count Five)

Plaintiff also alleges claims against Sydnor for false arrest under both state and federal law.  To prove these claims requires: (1) there was an arrest; and (2) the arrest was made without probable cause.  Troso v. Atlantic City, No. 10-1566, 2013 WL 1314738, at *4 (D.N.J. March 28, 2013); Gil v. N.J., No. 12-701, 2012 WL 2357503, at *5 (D.N.J. June 19, 2012) (discussing false arrest under New Jersey law).

It is not disputed by any party that Plaintiff was arrested.  Instead, Sydnor makes two arguments for dismissal:

---

[13] Because of the issues of fact that must be determined by a jury prior to a determination on Sydnor's assertion of qualified immunity, this decision is not an immediately appealable collateral order. Barton v. Curtis, 497 F.3d 331, 336 (3d Cir. 2007)("Because the District Court denied summary judgment on the ground that there is a material issue of fact to be determined by the jury, the order falls within Johnson [v. Jones, 515 U.S. 304 (1995)] and is one of the limited instances in which this Court does not have jurisdiction to hear an appeal of summary judgment in a 42 U.S.C. § 1983 cause of action where the defendant is asserting qualified immunity.").

(1) Plaintiff's lawyer stipulated to probable cause during the criminal hearing; and, (2) Sydnor is entitled to qualified immunity for his good faith belief of probable cause.

For the reasons already discussed at length above, this Court finds that there is an issue of fact surrounding whether Plaintiff stipulated to probable cause, which must be resolved by a jury.  With respect to Sydnor's claim that he is entitled to qualified immunity for his good faith belief as to the existence of probable cause, this Court applies the same analysis discussed above with respect to Plaintiff's malicious prosecution claim.  Again, the facts surrounding the circumstances leading to the arrest are heavily disputed and, based on this, the Court finds that is also a genuine dispute of material fact as to whether Sydnor acted without probable cause in arresting Plaintiff such that summary judgment must be denied.  See Goodwin v. State of New Jersey, No. 12-1040, 2014 U.S. Dist. LEXIS 38827, at *20 (D.N.J. Mar. 25, 2014)("Defendants simply have not shown that there is insufficient evidence for a jury to make a finding that Defendants lacked probable cause to arrest Plaintiff; thus it would be inappropriate for the Court to make a ruling on the issue of probable cause.").

Similarly, the issues of fact preclude this Court from ruling on whether Sydnor is entitled to qualified immunity at

29

this juncture.  Id. at *20 n.11 ("the material dispute over probable cause is sufficient at this juncture to preclude the Court from ruling on whether Defendants are entitled to qualified immunity.").  Accordingly, Sydnor's request for qualified immunity and his motion for summary judgment on Plaintiff's false arrest claims will be denied.[14]


## V. Conclusion

For the reasons outlined above, the remaining Defendants' respective motions for summary judgment are granted in part and denied in part.  Pursuant to this Opinion, the only remaining viable claims are: Plaintiff's 42 U.S.C. § 1983 and NJCRA claims against Sydnor for excessive force, malicious prosecution and false arrest and against Weiss for common law assault and battery.  An appropriate Order will issue this date.


s/Renée Marie Bumb
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Date: June 27, 2014

---

[14] Because "New Jersey courts consider false arrest and false imprisonment to be the same tort" this Court will similarly grant summary judgment on Plaintiff's state law false imprisonment claim.  See Burroughs v. City of Newark, 11-1685, 2013 U.S. Dist. LEXIS 112288, at *15 (D.N.J. Aug. 9, 2013).